Steven R. WYCOFF, Appellant,

v.

Crispus NIX, Warden, Appellee.

No. 88–1324SI.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 18, 1988.

Decided March 13, 1989.

Rehearing Denied April 18, 1989.

James P. Cleary, Phoenix, Ariz., for appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

Steven R. Wycoff, an Iowa state prisoner serving a life sentence for first degree murder of a fellow inmate, appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Wycoff contends that he is entitled to relief because of prosecutorial misconduct, denial of the right to compulsory process in violation of the 6th amendment and ineffective assistance of counsel. We affirm.

The procedural history in this case is lengthy. It begins with Wycoff's direct appeal from the trial court decision, where the Iowa Supreme Court affirmed the conviction. *State v. Wycoff,* 255 N.W.2d 116 (Ia.1977), Hutcheson and Liles, Wycoff's trial attorneys, also argued the direct appeal. After Wycoff obtained new counsel a post-conviction court convened in 1983 to hear the petitioner's habeas claims. The post-conviction court completed its hearings in May of 1983 after painstakingly addressing twenty-four issues and entered its unpublished order denying relief on October 31, 1983. Wycoff appealed the post-conviction court's decision to the Iowa Supreme Court, who transferred the appeal to

---

* The HONORABLE FRED J. NICHOL, Senior District Judge, For the District of South Dakota, sitting by designation.

the Iowa Court of Appeals. In an unpublished opinion the Iowa Court of Appeals reversed the post-conviction court. The Iowa Supreme Court reviewed the Court of Appeals decision and in an exhaustive review reversed the Iowa Court of Appeals denying petitioner habeas relief. *Wycoff v. State*, 382 N.W.2d 462 (Ia.1986). Wycoff then petitioned the U.S. District Court of Iowa for habeas relief but was denied.[1] Wycoff now appeals to this court.

The factual background of this case is sufficiently set forth in the Iowa Supreme Court decision. *Id.* We will discuss as necessary facts relevant to the arguments petitioner raises on this appeal. Specifically, the petitioner argues the following items entitle him to habeas relief:

(1) the prosecutor improperly cross-examined defense witness Cain, an inmate, without factual predicate and made excuse for the missing predicate in closing argument;

(2) the prosecutor's examination of the victim's wife was designed to inflame and prejudice the jury.

(3) the prosecutor examined two prosecution witnesses regarding threats without factual predicate;

(4) the prosecutor used false and misleading testimony in an in-court test regarding the presence of blood on a jacket;

(5) the court and counsel by stipulation improperly limited defense witness Tressler's testimony in return for the availability of Tressler to Wycoff for trial;

(6) his counsel acted unprofessionally during readback of testimony and failed to object to the court's admonishment.

(7) his counsel failed to object at trial and failed to appeal as to other prosecutorial misconduct;

(8) his counsel failed to interview and call witnesses with information favorable to his defense;

(9) his counsel failed to request an alibi instruction; and

(10) Wycoff's counsel labored under a conflict of interest in their concurrent representation of a possible prosecution witness and did not inform the petitioner or the court.

*Wycoff*, 382 N.W.2d at 465. They will be taken up in order, together with the relevant facts, under the appropriate standard of review.

## PROSECUTORIAL MISCONDUCT

■ The petitioner's specific allegations of prosecutorial misconduct are detailed in items one through four in the list from above. It is a fundamental principle that federal courts may intervene in state judicial processes "only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (per curiam); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Davis v. Wyrick*, 766 F.2d 1197, 1203 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986). Our review of prosecutorial misconduct claims is limited to determining whether the prosecutor's actions were so egregious that it fatally infected the entire trial, rendering it fundamentally unfair and denying [petitioner] due process." *Crespo v. Armontrout*, 818 F.2d 684, 687 (8th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 492, 98 L.Ed.2d 490 (1987); *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.1987) (en banc), *cert. denied*, — U.S. ——, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 1869, 40 L.Ed. 2d 431 (1974). Our review is further constricted when the state courts pass judgment on issues of fact. 28 U.S.C. § 2254(d) requires the federal courts in habeas proceedings to accord a presumption of correctness to state court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982). Thus, our scope of review is a narrow one. We hold, based on the findings of fact

---

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the District of Iowa, presiding.

made by the state court concerning prosecutorial misconduct, that the prosecutor's actions were not so egregious as to arise to the level of a constitutional deprivation.

The state court found no prosecutorial misconduct. Instead, the state court found the prosecutor acted in good faith, had adequate factual basis to cross-examine witnesses, did not deliberately attempt to mislead the jury and did not misuse evidence. *Wycoff,* 382 N.W.2d at 467, 468. These findings are entitled to a presumption of correctness under § 2254(d) unless one of the seven conditions specifically set forth in § 2254(d) is found to exist. *Sumner,* 455 U.S. at 592, 102 S.Ct. at 1304. We find none of those seven conditions exist. Moreover, the state court findings are fairly supported by the record. *Id.* Our canvass of the record, detailed below, convinces us the defendant has failed his burden of showing the factual determinations by the state court are erroneous or that absent the prosecutor's actions there is a reasonable probability the jury would have returned a different verdict. *Id.; Hamilton,* 809 F.2d at 470.

■ 1. *Cross-examination of Cain and argument on rebuttal.* Wycoff asserts misconduct in the prosecutor's cross-examination of defense witness Cain regarding an alleged conversation Cain had with a prison guard (Bowen) about the stabbing. The prosecutor implied Cain had a conversation with Bowen. Cain denied he had any conversation with Bowen. Petitioner argues that the prosecutor cross-examined Cain without factual predicate—e. g. he had no basis to believe that such a conversation took place but nonetheless asked questions about it anyway. The record reveals otherwise.

The state court found the prosecutor based his cross-examination of Cain on a BCI report summarizing a conversation between Cain and Bowen as told by Bowen to a BCI agent. Following the cross-examination of Cain in the criminal case, the prosecutor subpoenaed Bowen to testify. When Bowen arrived at the courthouse he told the prosecutor he did not have a conversation with Cain regarding the stabbing. The prosecutor did not call Bowen as a witness, nor did he otherwise impeach Cain's denial of the alleged conversation. Thus, Cain's undenied, unimpeached testimony was that he did not make such a statement to Bowen. We agree with the state court that there is nothing in the record necessitating a correction and no error of constitutional measure was committed. *See Wycoff,* 382 NW.2d at 466.

■ The other allegation of misconduct regarding Cain's questioning concerns the prosecutor's rebuttal comments during closing argument. Petitioner's defense counsel, in his closing, pointed out the prosecutor's failure to offer proof of Cain's conversation with the guard. The prosecutor responded in rebuttal that Bowen was not a guard, but a guard under suspension. The prosecutor believed this distinction important because a guard would likely have every reason to cooperate and testify for the state. Petitioner charges the prosecutor with misconduct by misleading the jury on the matter of the guard's employment status.

The state court found no misconduct by the prosecutor in his closing arguments. The state court found the prosecutor's comments were an extemporaneous response to defense counsel's arguments, and could not have been a deliberate attempt to mislead. Any implication that Bowen's testimony would contradict Cain's was inadvertent. *Wycoff,* 382 N.W.2d at 468. Nothing in the record detracts from these findings.

We find no error of constitutional dimension in the prosecutor's closing remarks. Defense counsel's argument invited a response by the prosecutor and the prosecutor has a right to reply to an argument raised by the defense. *Sanchez v. Heggie,* 531 F.2d 964, 967 (10th Cir.1976), *cert. denied,* 429 U.S. 849, 97 S.Ct. 135, 50 L.Ed.2d 122 (1976). If the prosecutor erred in his comments, the error falls on the side of "ordinary trial error," not the egregious sort of conduct that has resulted in relief from a federal court. *Compare Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1973) (the prosecutor withheld

evidence relevant to the extent of defendant's participation in the crime); *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967) (undershorts covered with paint, which the prosecutor knew in advance of trial, were misrepresented as being covered with blood repeatedly throughout the trial). Moreover, the prosecutor's remark, taken in context with the lengthy exhortation of both closing arguments, was not such that it tended to diminish the jury's view of the trial. *Hayes v. Lockhart*, 852 F.2d 339 (8th Cir.1988); *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

■ 2. *Direct examination of victim's wife.* Wycoff alleges misconduct in the prosecutor's deliberate attempt to arouse the passion and prejudice of the jury by showing the victim's wife pictures of her husband after the stabbing. Upon showing the victim's picture to the wife, she became emotional and cried causing a recess. The state court found the prosecutor's explanation of the purpose for showing the pictures was to "humanize" the victim more credible than the defense assertion that it was a deliberate attempt to inflame the jury. *See Wycoff*, 382 N.W.2d at 468. Credibility determinations are left for state courts to decide. We are not permitted to substitute our judgment as to credibility, nor are we entitled to draw inferences which are adverse to, or conflicting with the state courts. *Maggio v. Fulford*, 462 U.S. 111, 113, 103 S.Ct. 2261, 2262, 76 L.Ed.2d 794 (1983); *Marshall v. Loneberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Graham v. Solem*, 728 F.2d 1533 (8th Cir.1984). Moreover, showing the picture was not so prejudicial that it amounted to a denial of due process because the prosecutor's action was not "of such magnitude as to deny fundamental fairness to the criminal trial." *Muetze v. Solem*, 871 F.2d 1093 (8th Cir.1988) (per curiam); *Warden v. Wyrick*, 770 F.2d 112, 116 (8th Cir.1988), *cert. denied*, 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985).

■ 3. *Threats.* The petitioner alleges misconduct in the prosecutor's injecting threat testimony without factual predicate. The only purpose the prosecutor had for introducing the threat testimony, according to petitioner, was to have the jury infer that he should be convicted because he would kill those who testified against him. The record fails to support petitioner's argument.

First, however, we must acknowledge the prejudicial nature threat testimony may present if not offered for legitimate purposes. Threat testimony is a striking example of evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case." *U.S. v. Guerrero*, 803 F.2d 783, 785 (3d Cir.1986), *quoting Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980). We can only imagine these perceptions are heightened for the jury when the defendant is a prisoner in a maximum security prison.

The prosecutor, in direct examination of witness Garrett, elicited testimony concerning general fears of testifying against a fellow inmate. This was not objected to. On recross-examination defense counsel inquired whether Wycoff or any of his friends had threatened Garrett. Garrett responded that Wycoff's friends had threatened him. The state argues that the purpose for eliciting the threat testimony was to show Wycoff's consciousness of guilt, which is permissible. *Guerrero*, 803 F.2d at 785; *U.S. v. Gonzalez*, 703 F.2d 1222 (11th Cir.1983); *U.S. v. Rosa*, 705 F.2d 1375 (1st Cir.1983). While it is tenuous that the threat testimony actually did show Wycoff's consciousness of guilt, the trial court did allow the testimony. Admissibility of evidence is a matter of state law and does not form the basis for habeas relief unless the trial error is so great it infringes upon a specific constitutional protection or so prejudicial that it amounts to a denial of due process. *Hulsey v. Sargent*, 821 F.2d 469, 472 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 299, 98 L.Ed.2d 258 (1987); *Warden v. Wyrick, supra*. This threat testimony does not arise to such a

level. The prosecutor merely questioned about the general fears of testifying against a fellow inmate. Defense counsel did not object. Instead, he asked the specific question on cross-examination which elicited the response from Garrett tying the threats to Wycoff. The prosecutor did not refer to Garrett's threat testimony at any other time during trial.

Another prosecution witness, Zacek, testified about threats he had received. The prosecutor questioned him about the difference between his deposition answers and the testimony at trial regarding the stabbings. Zacek explained this inconsistency by testifying at trial that his life was in jeopardy at the time of the deposition and that "Wycoff got word out ..." which was objected to and sustained. The prosecutor then asked Zacek general questions about his apprehensions for personal safety. The state argues the purpose for asking Zacek about the threats was an attempt to explain the reason for Zacek's prior inconsistent statements at the deposition. We find the prosecutor's questions regarding the threats, under the context of explaining a prior inconsistent statement, is permissible. *May v. Wyrick*, 635 F.2d 760 (8th Cir.1981) (per curiam); *U.S. v. Spears*, 827 F.2d 705, 709 (11th Cir.1987) *U.S. v. Franzese*, 392 F.2d 954, 960 (2d Cir.1968) *vacated on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *U.S. v. Cochran*, 499 F.2d 380, 388 (5th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975).

4. *False testing for blood.* After closely reviewing the record established by the state courts, we find no merit to petitioner's argument that the prosecution presented false and misleading scientific blood tests. The Iowa Supreme Court found that neither the state nor its expert misled the jury with in-court testing for blood on petitioner's jacket. *See Wycoff*, 382 N.W.2d at 469, 470. Petitioner has failed his burden of showing the factual determinations of the state court are erroneous. 28 U.S.C. § 2254(d); *Sumner, supra.*

5. *Denial of compulsory process.* Wycoff argues that his Sixth Amendment constitutional right to compulsory process for the attendance of a witness, Harold Tressler, was denied. Tressler was an inmate at the Iowa State Penitentiary at the time of the homicide and later, but before the trial, transferred to a prison in Missouri. Wycoff wanted to bring Tressler back to testify on his behalf at trial. He contends the state required defense counsel to agree not to inquire into Tressler's source of drugs in return for the state bringing Tressler from Missouri to testify.

The state court found there is no substantial evidence to support Wycoff's contention. *See Wycoff*, 382 N.W.2d at 470. We agree. The record of argument from the motion in limine hearing and the testimony of witnesses at the post-conviction court establish that no such agreement was made. The reason Tressler's drug connection was not explored at trial was because defense counsel believed it to be irrelevant, unbelievable and easily impeached. The Iowa Supreme Court found this evidence to be credible and unrefuted. *See Graham*, 728 F.2d at 1540, *citing Maggio*, 462 U.S. at 113, 103 S.Ct. at 2262 (credibility determinations are left for state courts to decide).

While Wycoff's trial was not perfect, few are, it was neither fundamentally unfair. *See Darden*, 106 S.Ct. at 2473 (defendant entitled to a fair trial, not a perfect trial). Moreover, the incidents above did not prejudice Wycoff's right to a fair trial. The Iowa Supreme Court observed that both sides attempted to question the witness' motives for testifying, especially the inmate witnesses. Their credibility was called into question generally and specifically. Accordingly, the cumulative physical evidence, while circumstantial in nature, had to be convincing and became too strong for Wycoff's attempted explanations. The overwhelming physical evidence, doubtless, was critical to the jury's determination of Wycoff's guilt. *Wycoff*, 382 N.W.2d at 468.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The appropriate standard of review for ineffective assistance of counsel claims is as follows:

An ineffective assistance of counsel claim presents a mixed question of law and fact ... Therefore, the presumption of correctness accorded the factual determinations of the state court under 28 U.S.C. § 2254(d) ... applies only to the historical facts underlying the attorney's performance but not to the ultimate conclusion as to whether or not effective assistance has been rendered. *Kellogg v. Scurr,* 741 F.2d 1099, 1100 (8th Cir. 1984); *Eldridge v. Atkins,* 665 F.2d 228, 236 n. 5 (8th Cir.1981), *cert. denied,* 456 U.S. 910 [102 S.Ct. 1760, 72 L.Ed.2d 168] (1982); *Strickland v. Washington,* 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). *See also Cuyler v. Sullivan,* 446 U.S. 335, 342 [100 S.Ct. 1708, 1715, 64 L.Ed.2d 333] (1980).

However, for the petitioner to prevail he must first show defense counsels' representation fell below an objective standard of reasonableness and, second, he must show there is a reasonable probability the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.

After carefully considering the arguments presented by the petitioner and reviewing the record, we conclude defense counsels' representation did not fall below the objective standard of reasonableness. In the matters of petitioner's allegations that defense counsel did not object to nor raise on appeal the prosecutor's misconduct, interviewing witnesses, failure to request an alibi instruction and unprofessional conduct during the readback of testimony, (items 6, 7, 8, 9 from the list above), the Iowa Supreme Court set out detailed findings on the historical facts underlying the attorneys' performance and concluded the petitioner received adequate representation. *See Wycoff,* 382 N.W.2d at 470–73. We agree.

■ However, petitioner's claim that he was deprived of effective assistance of counsel because defense counsel labored under a conflict of interest in their concurrent representation of a potential state witness merits closer scrutiny. Wycoff's defense counsel failed to disclose to their client and the court that they also represented a prison guard, Bowen, in his disciplinary proceedings and who was a potential prosecution witness. Bowen was never called as a witness at trial.

"When an attorney attempts to represent his client free of compromising loyalties, and at the same time preserve the confidences communicated by a present or former client in the same or a substantially related matter, a conflict arises." *U.S. v. Agosto,* 675 F.2d 965, 971 (8th Cir.1982), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). A conflict of interest rises to the level of a Sixth Amendment violation if an actual conflict of interest adversely affected the lawyer's performance. *U.S. v. Peeler,* 738 F.2d 246 (8th Cir.1984), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984). We find there was no actual conflict of interest that adversely affected the lawyer's performance in this case.[2]

Actual conflict of interest is absent in our case because counsels' representation of a guard in his disciplinary proceeding concerned matters entirely unrelated to Wycoff's trial. Moreover, information from Bowen's case was totally irrelevant to Wycoff's defense. The guard was never called as a prosecution witness, thus counsel never had an opportunity to examine him. Defense counsel did not object to the prosecutor's cross-examination of witness Cain concerning Bowen as a matter of tactics, not as an attempt to protect Bowen. *See Wycoff,* 382 N.W.2d at 471. As a result, there was no danger counsel would be tempted to use confidential information against the defendant or guard, or fail to conduct a rigorous examination on Wycoff's behalf for fear of misusing confidential information. *See Cheek v. U.S.,* 858 F.2d 1330, 1337 (8th Cir.1988).

The district court's denial of habeas corpus relief is affirmed.

---

**2.** It is preferable for attorneys to disclose information about potential conflicts. Failure to advise the court of a conflict *may* produce an actual conflict of interest. *Peeler, supra.*