## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | |
| | ) | I.D. No. 1812004090 |
| | ) | |
| EDWARD MUJICA, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 6, 2021
Decided: May 3, 2021
Reissued:  October 1, 2021

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

***Upon Defendant's Request for Appointment of Postconviction Counsel***
**DENIED**

## <u>ORDER</u>

Upon consideration of the motion for appointment of postconviction relief counsel filed by Defendant Edward Mujica ("Defendant"); Rule 61 of the Superior Court Rules of Criminal Procedure ("Rule 61"); the facts, arguments and legal authorities set forth in Defendant's motion; statutory and decisional law; and the entire record in this case, the Court finds as follows:

1. This case involves domestic violence.  Defendant was arrested on January 23, 2019 and charged with Stalking, Wearing a Disguise During the Commission of a Felony and Non-Compliance with Conditions of Release, specifically, a No-Contact Order.

2. Defendant was committed to the custody of the Department of Correction in default of bail and was appointed counsel ("Defense Counsel").

3. On October 17, 2019, Defendant pled guilty to Felony Stalking. In connection with the Plea Agreement, the State dismissed the charges of Wearing a Disguise During the Commission of a Felony and Non-Compliance with Conditions of Release, specifically, a No-Contact Order.

4. Pursuant to Superior Court Criminal Procedural Rule 11(c)(1), the Court addressed Defendant personally in open court[1] and determined that Defendant

---

[1] The Court addressed Defense Counsel as well as Defendant in open court.

> The Court: All right. [Defense Counsel] your presentation regarding your client's waiver of his constitutional trial rights and any collateral consequences as well as the statutory consequences he will face.
>
> [Defense Counsel]: Yes, Your Honor, we have discussed the factual allegations. We have discussed the trial rights that he waives. He understands very well that this could have an effect on his immigration status and talked about this for months. I believe he is doing this knowingly, intelligently and voluntarily.
>
> The Court: Mr. Mujica, you are before the Court on a felony allegation of stalking, and a felony allegation of wearing a disguise during the commission of a felony, and a misdemeanor of noncompliance with conditions of release. You are entitled to have a trial. At a trial, the jury would be told that you are presumed innocent. You could only be convicted if the jury unanimously agreed that you were guilty beyond a reasonable doubt. You would have the opportunity to challenge the State's evidence and to confront the witnesses who testified against you. [Defense Counsel] would represent you at trial. The trial was scheduled to begin today and the witnesses are present in the courtroom. At a trial, it's possible that you would be found not guilty. It's also possible that you would be found guilty of both

understood the nature of the charges to which the plea was offered and the maximum possible penalty provided by law. Accordingly, Defendant acknowledged in open court that the range of possible penalties included the sentence that was imposed by the Court in this case.[2] In addition, the Court addressed with Defendant the fact that the federal government had lodged a detainer for Defendant's deportation.[3]

5. The Court exercised its broad discretion to impose a prison sentence in excess of the State's recommendation, but within the range of penalties set by statute.

---

felony offenses as well as the misdemeanor offense. [Defense Counsel] has negotiated a plea whereby if you plead guilty to stalking Count 1, the lead charge, the State will dismiss the other two charges you face. Do you understand your constitutional trial rights?

The Defendant: I do understand them.

The Court: Do you understand the risks and benefits of going to trial?

The Defendant: I do understand them.

The Court: Do you understand the risks and benefits of pleading guilty?

The Defendant: I do understand them.

The Court: Specifically for the crime of staking, you can be incarcerated up to three years; is that your understanding?

The Defendant: Yes.

*State v. Mujica*, No. 1812004090, at 7–9 (Del. Super. Oct. 17, 2009) (TRANSCRIPT).

[2] *See id.* at 9.

[3] The Court specifically addressed Defendant's potential deportation consequences in open court.

The Court: Mr. Mujica, it is also possible that the conviction for this offense will have other consequences with respect to your status of being able to live in this country. Do you understand that?

The Defendant: Yes, I do understand.

*Id.*

Additionally, the Court found that public safety would be enhanced by an extended period of probation pursuant to 11 *Del. C.* § 4333(d)(2).

6.     Defendant was sentenced by Order dated October 17, 2019, effective January 23, 2019 for Felony Stalking (3 years at Level V/DOC Discretion, suspended after 2 years, 6 months, for 6 months at Supervision Level III/GPS).

7.     Defendant did not appeal the conviction or his sentence to the Delaware Supreme Court.

8.     Defendant filed a motion for postconviction relief ("Defendant's Rule 61 Motion") as a self-represented litigant as well as a request for appointment of counsel on October 19, 2020.  On November 10, 2020, Defendant requested the opportunity to amend or supplement his motion.  Defendant's request was granted on December 2, 2020, and the Court provided Defendant with an additional 15 days to supplement his motion.  As of February 26, 2021, the Court had not received any additional submissions.  The Court was concerned that the delayed submission was related to interruptions created by the COVID-19 pandemic, therefore, the Court conducted a conference with Defendant on March 11, 2021 via Zoom to discuss the status of Defendant's postconviction motion and whether he still intended to supplement his submission. Defendant requested additional time, which was granted by the Court.  Defendant's supplemental briefing was received by chambers on April 6, 2021.

9. The Court was notified by DOC that Defendant was deported in or about April 2021.

10. Defendant challenges his October 17, 2019 Guilty Plea on the grounds that he was denied the right to effective assistance of counsel in connection with his plea.

11. Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[4] Before addressing the merits of Defendant's Rule 61 Motion, the Court must consider procedural requirements for relief set forth in Rule 61(i).[5] If a procedural bar exists, the Court will not consider the merits of the postconviction claim.[6]

12. Rule 61(i)(1) bars a motion for postconviction relief if the motion is filed more than one year from the final judgment of conviction;[7] this bar is inapplicable as Defendant's Rule 61 Motion was timely.[8] Rule 61(i)(2) bars

---

[4] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] *Id.*
[7] Super. Ct. Crim. R. 61(i)(1) ("A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court."). As Defendant's Rule 61 Motion does not assert a retroactively applicable right, this timing limitation is inapplicable.
[8] *See* Super. Ct. Crim. R. 61(m)(1). A judgment of conviction is final for the purpose of Rule 61 thirty days after the Superior Court imposes a sentence if the defendant does not file a direct appeal. The Superior Court imposed Defendant's sentence on

5

successive motions for postconviction relief;[9] this bar is inapplicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the postconviction motion includes claims that were not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural bars and prejudice from a violation of the movant's rights.[10] Moreover, Rule 61(i)(4) bars relief if the postconviction motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[11] Rule 61(i)(3) and (i)(4) do not apply to Defendant's Rule 61 Motion because ineffective assistance of counsel claims generally cannot be raised on direct appeal.[12] Accordingly, the Court will address Defendant's Rule 61 Motion on the merits.

---

October 17, 2019. Defendant did not file a direct appeal. Instead, Defendant filed an interlocutory appeal on September 10, 2020 from a Superior Court order granting his motion for transcripts at State expense, but otherwise denying his motion for discovery. The Delaware Supreme Court dismissed the interlocutory appeal. *See Mujica v. State*, 2020 WL 5870109, at *1 (Del. Oct. 1, 2020) (TABLE). Nevertheless, Defendant's conviction became final on November 18, 2019. Defendant's Rule 61 Motion was received by the Prothonotary on October 19, 2020. Therefore, Defendant's Rule 61 Motion is timely.
[9] Super. Ct. Crim. R. 61(i)(2).
[10] Super. Ct. Crim. R. 61(i)(3).
[11] Super. Ct. Crim. R. 61(i)(4).
[12] *See Wright v. State*, 2019 WL 2417520, at *3 (Del. June 6, 2019) (TABLE) ("In general, the Court does not consider on direct appeal claims of ineffective assistance of counsel.").

13.     The standard used to evaluate claims of ineffective counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[13] as adopted in Delaware.[14]  Under *Strickland*, Defendant must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[15]  Failure to prove either prong will render the claim insufficient.[16]  The Court shall dismiss entirely conclusory allegations of ineffective assistance.[17]  The movant must provide concrete allegations of prejudice, including specifying the nature of the prejudice and the adverse effects actually suffered.[18]

14.     With respect to the first prong–the performance prong–the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[19]  To satisfy the performance prong, Defendant must assert specific allegations establishing that Defense Counsel acted unreasonably as viewed against "prevailing professional norms."[20]  With respect to the second prong–the prejudice

---

[13] 466 U.S. 668 (1984).

[14] *Albury v. State*, 551 A.2d 53 (Del. 1988).

[15] *Strickland*, 466 U.S. at 687.

[16] *Id.* at 688; *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[17] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).

[18] *Strickland*, 466 U.S. at 692; *Dawson*, 673 A.2d at 1196.

[19] *Strickland*, 466 U.S. at 687–88.

[20] *Id.* at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations

prong–Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[21]

15.   Defendant contends that Defense Counsel was ineffective and denied Defendant his Sixth Amendment right to counsel. Specifically, Defendant asserts that Defense Counsel was ineffective for creating an atmosphere of coercion to accept the Plea Agreement; by failing to fully investigate Defendant's claims; by suggesting that "99% [of the time] the Judge give[s] you time served;"[22] and by failing to communicate with Defendant's family.

16.   In this case, Defendant plead guilty in open court. A defendant's statements to the Court during a plea colloquy are presumed to be truthful,[23] and pose a "formidable barrier in any subsequent collateral proceedings."[24] It is well-settled that in the absence of clear and convincing evidence to the contrary, a defendant is bound by the statements made during the plea colloquy and by his representations on the Truth-in-Sentencing Guilty Plea Form.[25] A knowing and

---

of ineffectiveness will not suffice.").
[21] *Ploof v. State*, 75 A.3d 811, 821 (Del. 2013) (quoting *Strickland*, 466 U.S. at 694).
[22] Def.'s Mot. for Postconviction Relief ¶ 51.
[23] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) (citing *Bramlett v. A.L. Lockhart*, 876 F.2d 644, 648 (8th Cir. 1989)).
[24] *Id.* (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).
[25] *Colburn v. State*, 2016 WL 5845778, at *2 (Del. Oct. 5, 2016) (TABLE) (citing *Somerville*, 703 A.2d at 632); *Harmon v. State*, 2016 WL 4710006, at *3 (Del. Sept. 8, 2016) (TABLE); *Grayson v. State*, 2016 WL 2935027, at *3 (Del. May 16, 2016)

voluntary guilty plea waives any objection to alleged errors and defects that occur before entry of the plea,[26] even those of a constitutional dimension.[27]

17. As mentioned, the sentence in this case was imposed pursuant to a Plea Agreement between the State and Defendant. Defendant signed the Plea Agreement. Pursuant to Rule 11(c)(1) of the Superior Court Criminal Rules, and the Court addressed Defendant personally in open court prior to Defendant's sentencing. The Court determined that Defendant understood the nature of the charges to which the plea was offered, including the mandatory minimum and maximum penalties provided by law. Defendant confirmed that his plea was voluntary, and not the result of force, threats, or promises apart from the plea agreement.[28] Therefore, the Defendant is bound by his statements made during his plea colloquy.

18. Defendant also signed a Truth-in-Sentencing Guilty Plea Form. Defendant's Truth-in-Sentencing Guilty Plea Form asks, "Has your lawyer, the

---

(TABLE); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016) (TABLE).

[26] *Muldrow v. State*, 2016 WL 4446610, at *2 (Del. Aug. 23, 2016) (TABLE); *Hobbs v. State*, 2016 WL 3751838, at *2 (Del. July 5, 2016) (TABLE); *Foote v. State*, 2012 WL 562791, at *1 (Del. Feb. 21, 2012) (TABLE); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003); *Downer v. State*, 543 A.2d 309, 312 (Del. 1988).

[27] *Scarborough v. State*, 2015 WL 4606519, at *3 (Del. July 30, 2015) (TABLE); *Fonville v. State*, 2015 WL 5968251, at *2 (Del. Oct. 13, 2015) (TABLE); *Wilson v. State*, 2010 WL 572114, at *2 (Del. Feb. 18, 2010) (TABLE); *Smith v. State*, 2004 WL 120530, at *1 (Del. Jan. 15, 2004) (TABLE) (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973)).

[28] *See* Truth-in-Sentencing Guilty Plea Form, *State v. Mujica*, No. 1812004090 (Del. Super. Oct. 17, 2019).

State, or anyone threatened or forced you to enter this plea?"[29] Defendant checked "No." The form further asks, "Are you satisfied with your lawyer's representation of you, and that your lawyer has **fully advised you of your** rights?" to which the Defendant checked "Yes."[30] In the absence of clear and convincing evidence to the contrary, Defendant is bound by his representations in his Truth-in-Sentencing Guilty Plea Form.

19. Moreover, Defense Counsel was not ineffective for failing to communicate with Defendant's family. The Delaware Rules of Professional Conduct state that "[a] lawyer shall provide competent representation to a *client*."[31] Furthermore, the scope of a lawyer's representation includes consulting with his or her *client*.[32] Defense Counsel had no duty to consult with Defendant's family regarding Defendant's decision to enter a plea.[33] Further, consulting with

---

[29] *Id.*

[30] *Id.*

[31] Del. Lawyers' R. Prof'l Conduct 1.1 (emphasis added).

[32] *See* Del. Lawyers' R. Prof'l Conduct 1.2 (emphasis added) ("[A] lawyer shall abide by a *client's* decision concerning the objectives of representation and, . . . shall consult with the *client* as to the means by which they are to be pursued." (emphasis added)).

[33] In support of Defendant's contention that Defense Counsel should have communicated with Defendant's family, Defendant submitted exhibits consisting of emails and text messages in Spanish allegedly sent by Defendant's family to Counsel. Because Defense Counsel's duty is to Defendant, and not to Defendant's family, the Court declines to consider these exhibits.

Defendant's family may have been a violation of the Delaware Lawyers' Rules of Professional Conduct.[34]

20.    Finally, as the sentencing judge who considered the entire record, the Court is satisfied that Defendant's decision to accept the plea negotiated by Defense Counsel was a reasonable decision in consideration of the very serious charges that were dismissed as a result of Defendant's acceptance of responsibility for Stalking. As noted, in connection with the Plea Agreement, the State dismissed the charges of Wearing a Disguise During the Commission of a Felony and Non-Compliance with Conditions of Release, specifically, a No-Contact Order.  If Defendant had gone to trial and was convicted of all charges, the maximum statutory penalty would have been nine years.

21.    Defendant's claims of ineffective assistance of counsel are conclusory and lack any factual support or citation to the record.  Based on the record, Defendant's Rule 61 Motion fails to overcome Defendant's representations to the Court during his guilty plea colloquy[35] and on the Truth-in-Sentencing Guilty Plea

---

[34] *See* Del. Lawyers' R. Prof'l Conduct 1.6 (client confidentiality).

[35] Defendant argues in his motion that he did not understand the statements made during the plea colloquy; however, Defendant is well-educated.

> The Court: How far did you go in school?
> The Defendant: I have a degree in business administration.  I also have media technology degree in industrial relations and career of–to become a lawyer.  I completed three of five years.
> The Court: So you are well-educated?
> The Defendant: Fortunately, yes.

11

Form. Further, Defendant's Rule 61 Motion fails to demonstrate ineffective assistance of counsel under the *Strickland* standard. The Court finds that Defense Counsel met the objective standard of reasonableness for representation of Defendant. The plea deal offered to Defendant was fair and reasonable based on the facts and the charges that arose from the allegations of repeated domestic violence.[36]

22. With respect to Defendant's motion for postconviction counsel, the Court has discretion[37] to appoint counsel for a first timely postconviction motion in a guilty plea case under Rule 61(e)(3) only if:

> (i) the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable;
> (ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or nolo contendere;
> (iii) granting the motion would result in vacatur of the judgment of conviction for which the movant is in custody; *and*
> (iv) special circumstances warrant the appointment of counsel.[38]

23. Defendant is not entitled to appointment of postconviction counsel in this case. The Court has the discretion to appoint counsel if the postconviction motion sets forth a substantial claim of ineffective assistance of counsel, among other things. Defense Counsel represented Defendant when he pled guilty. The

---

*State v. Mujica*, No. 1812004090, at 4–5 (Sept. 30, 2019) (TRANSCRIPT).

[36] At the plea and sentencing hearing, Defendant was served by New Castle County Police with a Lifetime Protection from Abuse Order related to the victim in this case.

[37] *See* Super. Ct. Crim. R. 61(e)(3) ("The judge may appoint counsel . . . .").

[38] Super. Ct. Crim. R. 61(e)(3) (emphasis added).

Court accepted Defendant's guilty plea as knowing, intelligent, and voluntary. As explained above, the record demonstrates that both Defense Counsel *and* the Court explained the consequences associated with pleading guilty. Moreover, the record shows that Defendant's counsel explained, and Defendant understood, the risks associated with proceeding to trial and the length of jail time Defendant could serve if convicted by a jury. Accordingly, the requirements of Rule 61(e)(3) are not satisfied.

24. The Court shall not appoint counsel. Defendant is not entitled to postconviction relief.

**NOW, THEREFORE, this 3rd day of May 2021, Defendant's Motion for Postconviction Relief is hereby DENIED, and Defendant's request for appointment of postconviction counsel is hereby DENIED.**

**IT IS SO ORDERED.**

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.*

*This decision was issued by Judge Andrea Rocanelli on May 3, 2021. As Judge Rocanelli has retired and is no longer a judge of this Court, the Order has been reissued by Judge William C. Carpenter, Jr. consistent with the September 20, 2021 remand order from the Delaware Supreme Court.